CHARLES A. THORNTON, Defendant in Error, *v.* JOSEPH C. IRWIN *et al.*, Plaintiffs in Error.

1. *Note — Mortgage — Release.*— Three indorsements were procured upon a bill of exchange payable at four months, and certain lands were mortgaged to the indorsers to indemnify them. At maturity of the bill, another, payable at three months, drawn and indorsed by the same parties, was procured and discounted, and the proceeds applied to the payment of the first bill; and two of the indorsers, without the knowledge of the third, caused satisfaction of the first mortgage to be entered of record: *held,* that such an entry, without the consent of the third indorser, constituted no release, and that the mortgage remained as security for the new bill.

2. *Mortgage, sale under—Purchase by mortgagee by interposition of another.*— Where at a sale of land by mortgagees the same was purchased by one of them through the interposition of a third person, such interposition was held to be a badge of fraud, and the sale was voidable at the instance of the mortgagor.

3. *Trusts — Purchase of trust property by trustee.*—Trustees, agents, administrators, guardians, attorneys, or others, whose connection with any other person is such as to establish a confidential relation between them concerning his property, or give them special knowledge and opportunities in regard to it, cannot without, and often cannot with, his full knowledge and consent, become the purchasers of such property, even though the sale was at public auction, *bona fide,* and for a fair price. And the rule applies although the trustee was a mortgagee with power to sell, and was also a creditor.

4. *Practice, Civil — Pleadings — Inconsistency.*—In an action to set aside a sale made under a mortgage, the averments that the mortgage was satisfied, and that, notwithstanding, the property was sold under it and bid in by one of the mortgagees, are not necessarily inconsistent.

*Error to Sixth District Court.*

*Douglass & Gage,* for plaintiffs in error.

I. Plaintiff should not have been allowed to redeem the property conveyed under the first mortgage under this bill, however

much he might be entitled to redeem under a suit properly brought for that purpose. The bill really contains two distinct counts and independent equity suits having no legal connection with each other, viz: First, the bill to rescind the sale and deeds under the first mortgage, on the ground that the debt secured thereby was paid and the mortgage satisfied. Second, the bill to redeem the second mortgage, which bill admits an existing debt unpaid. The plaintiff offers to pay that debt, and asks for redemption.

The two charges are directly inconsistent with each other. The charge that the mortgage was paid and satisfied on the 7th of January necessarily leads to the conclusion that after that payment the mortgage was dead. Irwin, and the other mortgagees named, upon the payment of the debt ceased to be mortgagees; had no further powers, duties, or rights over the property under the mortgage; held no longer a fiduciary capacity under it. The one charge directly denies the fiduciary capacity; the other no less directly asserts it. The denial in one charge and the assertion of it in the other are equally the very gist and substance of the respective charges. If, therefore, the two charges were made in form and substance in the same petition, the trial could only proceed upon one charge, and the other would be disregarded. The rule of pleading established by our courts is, that whenever, in a petition or answer, inconsistent grounds of action or defense are set up, the party will be confined in his case to the main or leading charge; and whatever is antagonistic to, inconsistent with, or outside of that charge, is to be regarded and treated as surplusage. Much less do our courts permit a party, either at law or in equity, to come into court and try his case upon one cause of action and recover upon another, and have a different remedy from the one asked or to which he would be entitled were the petition confessed. (Robinson v. Rice, 20 Mo. 230; Pensenneau v. Pensenneau, 22 Mo. 27; Harris v. Hann. & St. Jo. R.R., 37 Mo. 307; Coble v. McDaniel, 33 Mo. 263; Sto. Eq. Pl. 42; Cooper's Eq. Pl. 13, 14; 1 Daniels' Ch. Pr. and Pl. 385; Mitford's Ch. Pl. 38; Rochester v. Anderson, Littel's Sel. Cas. 147; Boone v. Chiles, 10 Pet. 211; Singleton v. Scott, 11

Iowa, 589; English v. Foxull, 2 Pet. 612; Hobson v. McArthur, 16 Pet. 195; Colton v. Ross, 2 Paige, 396.)

II. The order of release of January 7, 1861, signed by Ranson and Hedges, is not a legal satisfaction of the mortgage; neither a release nor a conveyance; is not acknowledged or recorded, and has no legal force or effect. Even if it were in form a perfect and full release, it would be a fraud upon Irwin; and the sale by the mortgagees could not be prevented or avoided by such fraudulent act of the parties. (Grove v. Robards *et al.*, 36 Mo. 523; Ewing v. Shafton, 34 Mo. 518; 2 Sto. Eq. § 977.)

III. The evidence regarding the taking of the second mortgage preponderates strongly in favor of the finding of the court that it was done without Irwin's knowledge or consent and never was assented to by him. This court will not disturb that finding.

IV. Notwithstanding the bill does not charge as a ground of relief the purchase by Irwin of the mortgaged property through Hale, yet without any ground for such action the court found that Irwin was the purchaser of the property through Hale, and upon that ground set aside the sale and decreed redemption in favor of the plaintiff. This finding was not warranted by the evidence. In such cases the evidence must be clear, certain, and conclusive as to facts, and precise and certain as to terms and conditions. (Miller *et ux* v. Stokeley *et al.*, 5 Ohio St. 194.) There is no certain evidence, no clear, conclusive act or word of evidence, except the statement of Irwin himself; and that statement is that he agreed to guarantee Hale against any loss he might incur by bidding, in case the property should be struck off to him. That agreement was not such as would avoid the mortgage sale. (Ives v. Ashley *et al.*, 97 Mass. 198.)

V. The bill of January 7 was a renewal of that of September 5, and the security of the mortgage of August 30 attached to it and continued in force in favor of defendant Irwin through all the renewals of the debt. (Chouteau *et al.* v. Thompson *et al.*, 3 Ohio St. 424; Patterson v. Johnson, 7 Ohio, 225; Brinkerhoff v. Lansing, 4 Johns. Ch. 65.)

VI. The court erred in setting aside the sale on account of Irwin's indirect purchase through Hale under the agreement as found by the court. No actual fraud was found, nor any evidence on which fraud could be found, against Irwin. Neither fraudulent intent nor unfair practice was shown or found against him. There was no finding of gross inadequacy.

It is admitted that a sale under such circumstances would be liable to be set aside under the doctrine of Fox v. Mackreth, 2 Browne's Ch. 400 ; but we submit that as that doctrine, when applied to modern cases, has no foundation in justice or reason, so it is now shaken as authority. ( Richards *et al.* v. Holmes *et al.*, 18 Howard, 143 ; Ives v. Ashley *et al.*, 97 Mass. 198.) These cases utterly disregard the peculiar doctrine of Fox v. Mackreth, and apply fairly and fully the true test of actual fraud and actual injury. In the case in 18 Howard, the trustee employs his own agent for the sale to bid for the property and buy it. Nothing is better established than that a trustee cannot do that as agent for a stranger which his capacity of trustee forbids him to do himself. (Irwin's Trusts and Trustees, 395.) The court can with as little effect examine how far the trustee has made an undue use of information acquired by him in the course of his duty in the one case as in the other.

The principle against which we here contend was first applied to cases like this only upon authority ; never upon considerations of justice or equity. The effect of the application of this rule in cases of this nature is to inflict a penalty upon the mortgagee of the severest kind by reducing his security far below that of a common mortgage, and to give the mortgagor the undue advantage of a privilege of redeeming the mortgage or not, at his option, within a reasonable time, which has been held to be in some cases fifty years, and generally for the period of the statute of limitations. (McNair v. Biddle, 8 Mo. 257 ; Cooley v. Rankin, 11 Mo. 642 ; Richards v. Holmes, 18 How. 143 ; Howard v. Davis, 6 Texas, 174 ; Erskine v. LeBaun, 3 Texas, 406.

VII. The doctrine of Fox v. Mackreth is not applicable to purchases of mortgages. ( Bergen *et al.* v. Bennett, 1 Caines' Cas. in Error. )

VIII. Upon the whole case, as made by the pleadings, evidence, and finding, there is no equity in favor of plaintiff, and the bill should be dismissed.

*W. B. Napton*, for defendant in error.

I. The decree of the court is justified by two hypotheses, both of which are found by the court as true in fact, and either of which is sufficient to sustain it.

1. A mortgagee with a power of sale contained in the same deed, or in a separate one, is to that extent a trustee, and cannot buy at his own sale, so as to extinguish the equity of redemption. (2 Sugd. on Vend., bottom p. 887–890 ; 1 Hill. Mort. 118–128, ch. 7, and 128–149 ; 1 Wh. & T. Lead. Cas. Eq. 208–214 ; 19 Verm. 9 ; Mapps v. Sharp, 32 Ill. 13 ; Dobson v. Racy, 3 Sandf. N. Y. 61 ; Benham v. Rose, 2 Cal. 387 ; Ramsey v. Merian, 6 Minn. 168 ; Baldwin v. Allison, 4 Minn. 25 ; 2 Tucker's Com. p. 447, ch. 21, and p. 459 ; 1 Sto. Eq. § 321 ; 2 Sto. Eq. § 1027 ; Jackson v. Walsh, 14 Johns. 415.)*

In some of the States — as New York and Minnesota — this subject is regulated by statute, and the mortgagee is allowed to buy under certain restrictions imposed by the statute, such as notice to the mortgagor, printed advertisements in some newspaper, sales by the sheriff or some officer selected by law. These are called statutory foreclosures, and have the same effect as regular foreclosures in court. (See Baldwin v. Allison, 4 Minn. 25 ; Allen v. Chalfield, 8 Minn. 435.)

The statute law in this State merely recognizes the validity of such mortgages, which at an early day had been questioned (Carson v. Blakey, 6 Mo. 273), but subsequently fully sanctioned by the court (Destrehan v. Scudder, 11 Mo. 484) ; and in 1855 the legislature put the question at rest by a clause in the Revised Code of that year. But although mortgagees may unquestionably buy at sales under judicial foreclosures, and also directly by negotiation with the mortgagor, under certain restric-

---

* The case of The Howards v. Davis, 6 Texas, 174, does not conflict; there was no offer to redeem, and the case merely decides that a purchase by the mortgagee was not void in a collateral proceeding, which we may admit.

·tions ( McNair v. Biddle, 8 Mo. 257), yet no case allows a mortgagee to become a buyer where he assumes to sell under a trust or power contained in the deed; for the plain reason, applicable to all such trusts or agencies, that one man cannot perform conflicting duties and interests — it being the duty of the seller to get the highest price, and the interest of the buyer to get the property at the lowest.

A purchase by the mortgagee through the interposition of a third person; or, as the law phrase is, *per interpositam personam*, not only fails to make the matter better, but is considered by courts of equity as an unequivocal mark of fraud, and is therefore denominated *fraud per se*. (2 Tuck. Com. 447.)

2. Another ground on which the decree may be sustained is the fact found by the court, and indeed concerning which there can be no question, that the two mortgagees, Ranson and Hedges, acknowledged satisfaction of the mortgage, and filed their written acknowledgment with the clerk or recorder for record. Although this was done, as the court found, without the assent of the third mortgagee, Irwin, and therefore might be held not to affect his right, yet this act estopped (Equitable Estoppel, defined by Leonard, J., 21 Mo. 87) the mortgagees, Ranson and Hedges, from joining in executing the power or trust; and as the union of all three is necessary, on common law principles, to an execution of the power or trust, Irwin's only remedy was to go into a court of equity for a foreclosure.

II. In regard to the pleadings in this case, it is enough to state that there was a prayer for general relief, and under this the court could grant any relief consistent with the allegations of the bill, whether especially asked or not. (Thornton v. Pigg, 24 Mo. 252; Holland v. Anderson, 38 Mo. 55.)

The petition (or bill, as it used to be called) in every aspect looks to and seeks for a redemption of the mortgaged property, and, when analyzed, may be considered as presenting, though not in an orderly and formal manner, four distinct grounds for this relief. 1. That the purchase was made by the mortgagee through the interposition of a nominal buyer, and was therefore voidable at the instance of the mortgagor. 2. That the two

mortgagees, Ranson and Hedges, by acknowledging satisfaction of the first mortgage, even without the consent of Irwin, estopped themselves from afterward uniting with him and advertising and selling under that mortgage. 3. That Irwin did, in fact, assent to this action of Ranson and Hedges ; and of course, in that event, the first mortgage was *functus officio*. 4. That the circumstances under which the sale was made were such as to occasion a great sacrifice of the property ; that the existing war, the depression in value of town property, the absence of the mortgagor in a distant State, and one actually in revolt against the government, the want of sufficient notice, and the place selected to sell — that all these facts combined would induce a court of equity to set aside the sale, apart from the other grounds taken.

The finding of the court is against the plaintiff on the third ground maintaining the vitality of the first mortgage ; and although the court also finds the fact of a sacrifice of the property, referred to as a part of the fourth ground, the decree is based mainly upon the first ground, although it may be supported also on the second ; and although the specific relief asked was not granted, the relief that was granted was in conformity to those allegations of the petition which the court found to be true, and was therefore just such a decree as the court should have rendered under its finding of facts.

BLISS, Judge, delivered the opinion of the court.

On the 5th of September, 1860, plaintiff drew a bill of five thousand dollars, at four months, payable at the Citizens' Bank of New Orleans, and procured its indorsement, for his own accommodation, by defendants Irwin, Ranson, and Hedges, which bill was discounted for him at the Kansas City branch of the Union Bank. To secure his indorsers he mortgaged to them certain real estate in Kansas City, including lots 167 and 168. On the 7th of January following, one day before the maturity of the bill, another bill of the same amount, at three months, drawn and indorsed by the same parties, was procured by plaintiff, discounted by the same bank, and its proceeds applied to the payment of the first bill. On the 10th of April following, the plaintiff paid five

hundred dollars on the debt, and procured another bill at ninety days, drawn and indorsed by the same parties, to be discounted by the same bank, and the proceeds were employed in discharge of the second bill. When the last bill matured it was protested, the indorsers were sued, and judgment was obtained against them, which was paid by defendant Irwin. The original mortgage to secure these indorsers contained a power of sale in the mortgagees, and soon after the last bill was paid by Irwin they advertised and sold the land covered by it; and one Hale, by the procurement of Irwin, bid in the property, and, without paying or expending anything upon the purchase, received a deed from the mortgagees, and soon after deeded the property to Irwin. Upon the maturity of the first bill — and upon this matter the chief controversy arises — the said Ranson and Hedges, without the knowledge of Irwin, as he claims, accepted another mortgage of Thornton, covering all the land embraced in the first mortgage except said lots 167 and 168, for the security of the indorsers of the second bill, and authorized the recorder of deeds of Jackson county to enter upon the records satisfaction of the first mortgage, which was done. Thornton was absent from the State at the time of the sale made under the original mortgage, and the property was bid off by Hale for the sum of four thousand eight hundred and sixty-six dollars. Thornton, Ranson, and Hedges had become insolvent, and Irwin remained the only responsible party to the bill.

Thornton filed his petition in equity in the Jackson County Circuit Court, praying that the sale to Hale and defendant Irwin be set aside, that he be permitted to redeem the second mortgage upon the repayment of the amount paid by Irwin, with interest, etc., and for an account of rents and profits, with the general prayer for relief. He sets up at length the transactions of the parties, and bases his claim for relief upon the ground that the first bill was paid and satisfied on the 7th of January; that Ranson and Hedges took the second mortgage given to secure defendants' liability upon the second bill, and which left out said lots 167 and 168, with the consent of Irwin, and that the release and satisfaction of the first mortgage by them was made with his

approval. He also claimed that the sale to Hale was a mere cover ; that the real purchaser was Irwin, the trustee as well as mortgagee.

The Circuit Court made long and special findings, and found the allegations in relation to the payment of the first note and the satisfaction and discharge of the mortgage to be untrue. But the court also found that Irwin, the mortgagee with power to sell, purchased the mortgaged property at his own sale, through the medium of Hale as his agent, and held that the plaintiff was entitled to redeem. An interlocutory judgment was entered, allowing plaintiff to redeem upon payment of the principal, interest, taxes, etc. ; and at the next term, upon the deposit by the plaintiff of the sum of eight thousand six hundred and fifty dollars and fifty cents with the clerk, the amount found due under the interlocutory judgment, the court gave final judgment, canceling the mortgages and setting aside the sale. Defendant Irwin appealed to the District Court, which affirmed the judgment of the Circuit Court, and brings the cause by writ of error to this court.

By the proper motions and exceptions the whole record is brought before us, and we must examine to see whether the judgment of the Circuit Court should be sustained. The first and chief ground upon which the petition seeks relief is the claim that the original bill and mortgage were satisfied. The pleader evidently regarded that as his chief if not only point; and the claim of the plaintiff, so strongly urged, that the petition afforded no other ground for relief, is at least plausible. I have examined with care all the evidence bearing upon this question, contradictory as it is, and am satisfied that no other reasonable conclusion could be arrived at than that of the Circuit Court. Mr. Harris, cashier of the bank, and one of plaintiff's witnesses, insists that the first bill was paid and not renewed ; but, taking his whole testimony, I find it rather an opinion than statement of fact, and his careless statements in relation to "telegraphic exchanges," squarely contradicted by the plaintiff himself, do not entitle his opinion to any great weight. The testimony of plaintiff and his witnesses, taken together, shows that the second bill was simply a

renewal, and not a payment of the first, and that the demand of the price of exchange and the difference between the value of New Orleans and Missouri currency was only a mode, quite too common in banks, of obtaining a higher rate of interest than the law allows.

In relation to the satisfaction of the first mortgage entered of record by Ranson and Hedges, it is not brought home to Irwin. It is true the plaintiff testifies to declarations in regard to it by Irwin that would imply assent, but they are expressly contradicted by him and by the probabilities of the case. A release of his security by an accommodation party to a note or bill is not to be presumed; and even if a parol release, or power to release, were good, the evidence should be clear before it will be found. Not being released, and there being no intention on the part of Irwin to release it, the mortgage will remain as security for the new bills. (Hill. on Mort. ch. 17.)

The plaintiff below also claims that, at the sale of the property by the mortgagees, it was purchased by Irwin, one of them, through the intervention of a third person, and therefore the sale was voidable at the instance of the mortgagor.

The fact was sufficiently proved, and the legal position is well taken. Irwin's own testimony needs but a slight addition to enable us to find the fact, and that addition is supplied by the conduct of Irwin and Hale at and after the sale. Irwin says that he applied to his friend Hale to make the purchase, and told him that he would save him harmless, that he should lose nothing by it. At the sale, and just after his bid, upon being congratulated upon the purchase, Hale stated to the bystanders, among whom was Irwin, that he had bought for Irwin, though it does not appear that the latter heard it. Upon leaving town, a deed to Hale was executed by Irwin and the others, and left with Irwin's attorney; and immediately on his return a deed from Hale was made to him, and the only money that passed between them was the attorney's fee for drawing papers and attending the sale, which was paid by Irwin. Hale paid nothing, made nothing, lost nothing, did everything at Irwin's instance, and it is impossible to resist the conviction that he acted simply as his friend and agent. The court,

then, correctly found that Irwin was the actual buyer. The legal effect of such purchase is plain. The doctrine that trustees, agents, administrators, guardians, attorneys, or others whose connection with any other person is such as to establish a confidential relation between them concerning his property or give them special knowledge and opportunities in regard to it, cannot without, and often cannot with, his full knowledge and consent, become the purchasers of such property, is well settled in the jurisprudence of England and of the United States. It is also well established by the civil law, and affirmed in those European states whose laws are founded upon it. The leading case in England is that of Fox v. Mackreth, 2 Brown's Ch. 400, heard twice before Lord Chancellor Thurlow in 1788, and reviewed in the House of Lords; and the doctrine of that case is affirmed and extended in all the authoritative cases since that time. Among the important cases in the United States where the question is involved are Davoe v. Fanning, 2 Johns. Ch. 252; Michaud *et al.* v. Girod *et al.*, 4 How. 503; and Gardner v. Ogden 22 N. Y. (8 Smith) 327. Chancellor Kent, in Davoe v. Fanning, gives a very able review of the English cases and those at that time decided in this country, and leaves but little to be said upon the question. He states the true ground of the position, and, in criticizing some remarks of Lord Roselyn in another case, says: " The objection to most of these observations is, that they do not place the question on the true principle. However innocent the purchase may be in the given case, it is poisonous in its consequence. The *cestui que trust* is not bound to prove, nor is the court bound to judge, that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power distinctly and clearly to show it. There may be fraud, as Lord Hardwicke observed, and the party not able to prove it. It is to guard against this uncertainty and hazard of abuse, and to remove the trustee from temptation, that the rule does and will permit the *cestui que trust* to come, at his own option and without showing actual injury, and insist upon having the experiment of another sale." In Michaud v. Girod, the interposition of the third person to bid for the trustee was treated as itself a badge of

fraud, and Judge Wayne remarks: "The rule of equity is, in every code of jurisprudence with which we are acquainted, that a purchase by a trustee or agent of the particular property of which he has the sale, or in which he represents another, whether he has an interest in it or not, *per interpositam personam*, carries fraud on the face of it." In giving the reason of the rule, he says: "The general rule stands upon our great moral obligation, to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand toward each other. The disability to purchase is a consequence of that relation between them which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest the law wisely interposes; * * * and it makes no difference in the application of the rule that a sale was at public auction, *bona fide*, and for a fair price, etc. * * The inquiry in such a case is not whether there was or was not fraud in fact. * * * The rule, as expressed, embraces every relation in which there may arise a conflict between the duty which the vendor or purchaser owes to the person with whom he is dealing, or on whose account he is acting, and his own individual interest." In Gardner v. Ogden, the Court of Appeals of New York treated a clerk of an agent employed to sell plaintiff's real estate as embraced within the rule, though the sale was by voluntary deed of the plaintiff himself. An elaborate opinion is given, reviewing the leading cases, and the rule is enforced in all its stringency. Its application is based upon the fact that these clerks were employed in the office of the agent, not by plaintiff; that they had access to his correspondence with their employers; knew of his desire to sell the land, and of its condition, the same as their employers, and should be under the same disabilities.

I have referred more fully to these cases, because counsel dwelt upon the fact, as important, that there was no actual fraud in the case before us. There is, it is true, no evidence of fraud in fact.

It does not appear that Irwin took undue advantage of the plaintiff. He had paid the debt, and had a right to avail himself of his security. His bid was the highest, and there is no evidence that the property could then have been sold for more. It is also true that the rule is adopted to prevent fraud, but still fraud need not appear. If it were required to show it, the rule would be wholly unnecessary, for fraud vitiates everything; and this sale, if tainted by it, would be set aside, whether Irwin or any one else had bought the property. It is analogous to the statute of frauds, which invalidates transactions often very innocent. The disability is intended to lift the trustee above temptation; to induce him—to compel him, rather— as far as possible, instead of planning sales to benefit himself, instead of to that end arranging them either as to time or the circumstances surrounding them, instead of studying to conceal material facts, to look only to the interests of the person for whom he acts. That person might be wholly unable to show actual fraud on the part of his trustee. He is not required to do it. I have only referred to these leading authorities in support of the general doctrine. More are unnecessary. The question has been raised in the courts of nearly every State in the Union, and has always been decided in the same way. All the text books strongly affirm it.

Defendant's counsel has cited two cases as relaxing the rule. One is Ives v. Ashley, 97 Mass. 198, where the judge says: "The authorities cited do not sustain the position that if an administrator about to sell real estate procures a person to purchase it on his own account, the sale is therefore void. The heirs may, within a reasonable time, elect to avoid it, and the purchaser is in such a case regarded as a trustee; or they may allow it to stand, and in such a case it is valid without any further act." The rule is not so strongly put in this case as in Michaud v. Girod, but still it is sustained. The other case is Richards v. Holmes, 18 Howard, 143, where the court decides that the auctioneer at a trustee's sale may receive a specific bid from the absent creditor, though sent to the trustee. The creditor was not the trustee, nor was the trustee his general agent for purchasing the property, and the court treats his bid as though made by him on the ground.

Counsel strongly urges that the rule in its strictness applies only to naked trusts, and not to trusts coupled with interest, as in case of mortgagees with power to sell. I can see no reason why such mortgagee, so far as concerns the interests of the mortgagor, as well as the subject matter of the mortgage, is not a mere trustee, and should not be subjected to the disabilities of a trustee. It makes no difference that he is also a creditor. If he voluntarily assumed a trust relation, if he is clothed with confidential powers, and opportunities are thus offered him to speculate at the expense of his principal, his acts should be guarded with the same jealousy, and he should be equally removed from temptation, as though a mere trustee or agent. His personal interest as mortgagee consists only in securing the debt and seeing that the property pays it. The debtor's interest embraces and extends beyond that, and it is the trustee's duty to guard it as his own. As to that interest as well as his own he is a mere trustee, and he cannot ignore his obligations.

I have examined the books with care, and, while simple mortgagees are allowed to purchase at judicial sales of the mortgaged property, I have been unable to find a case where at his own sale a mortgagee with power to sell may acquire title as against the mortgagor. In Henricks v. Robinson *et al.*, 2 Johns. Ch. 283, the court, upon a creditor's bill, went so far as to sustain, as against creditors, a sale by the mortgagor to his mortgagee with power to sell, as made in good faith and for a fair price, and I have seen no case that goes further. The *cestui que trust* in this case made no complaint, and the creditors could only impeach the sale for fraud.

Sugden (on Vendors, bottom p. 890) says : "But if a mortgagee take a conveyance with a power of sale, he is a trustee for sale, and as such is disabled from purchasing."

Hilliard (on Mortgages, ch. 7) describes the gradual recognition of mortgages with powers of sale in the mortgagee ; regards them as established, though for some time they were looked upon with suspicion. He treats such powers as "trusts declared upon the legal estate in the mortgagee," and shows that, like other powers, they should be strictly pursued.

In Howard v. Ames, 3 Metcalf, 308, the Supreme Court of Massachusetts subjects the mortgagee with power to sell to certain obligations: "Like any other agent, factor, a trustee to sell. Like other trustees, he cannot himself directly become the purchaser, or do the same thing through the agency of another." See also Middlesex Bank v. Minot, 4 Met. 325.

The Supreme Court of California, in Benham v. Rowe, 2 Cal. 387, applies the rule to mortgages as follows: " When a power of sale is contained in a mortgage, and a sale made by virtue of such power, and the mortgagee becomes the purchaser, the equity of redemption still attaches to the property in favor of the mortgagor." In this case the power to sell was in the mortgagee, and not in a third person.

In Hyndman v. Hyndman, 19 Verm. 9, the Supreme Court of Vermont makes the same application of the rule, and says that " such sales have always in the English chancery, and in this country, unless where the matter is controlled by statute, been held voidable at the election of the mortgagor."

In New York, Michigan, and Minnesota, this matter is regulated by statute, and, by conforming to the statute, the mortgagee is permitted to purchase; but no such permission is granted in Missouri.

The relief granted by the court in the various cases which fill the books varies according to circumstances. In naked powers to sell, a re-sale is usually ordered. In mortgages, the usual order has been to permit the mortgagor to redeem ; and the relief given in the Circuit Court in the case before us was the correct one.

A question of pleadings is raised. The plaintiff in error claims that the plaintiff below laid no foundation in his petition for the relief obtained. It is evident that the mind of the pleader was principally directed to the first branch of his case. But the averments that the mortgagee purchased the property, through another, at his own sale, are clear and distinct, though closely connected with other averments not found to be true. They furnish sufficient ground for the main relief prayed for and granted, to-wit: that the sale be set aside. The two distinct facts set up in the petition, that the first mortgage was satisfied,

and that, notwithstanding, the property was sold under it and bid in by Irwin, are not contradictory or inconsistent, as is claimed. Both may be true. It may be true that there was a transaction between the parties, the legal effect of which would satisfy the mortgage ; and it may also be true that this effect was not recognized by the mortgagee, and that he proceeded to sell and bid in the mortgaged property. If allegations are inconsistent, the proof of one must disprove the other. One may not deny that he made a contract, and also plead that, after he had made it, he was released from its obligations.

The relief granted is also quite consistent with that sought. The plaintiff asked that the sale be set aside and that he be permitted to redeem the second mortgage. The sale was set aside, and he was permitted to redeem both the mortgages ; for both were given for the same debt, and the payment of the debt extinguishes both.

It should be observed that no objection was taken below to the joinder of two equitable causes of action in one count or statement, and we will not here consider the question whether such objection should lie.

The judgment of the District Court affirming the judgment of the Circuit Court is affirmed. The other judges concur.