State ex rel. v. Jones.

THE STATE *ex rel.* JONES, *Appellant*, v. JONES *et al.*

### Division One, November 26, 1895.

1. **Appellate Practice**: HARMLESS ERROR. Where the judgment of the trial court is for the right party on the pleadings and admitted facts, it will be affirmed notwithstanding any error on the trial.

2. **Executor**: BOND: LEGATEE: FRAUD. In an action at law on an executor's bond to recover a legatee's share of the estate, an assignment by plaintiff to the executor of his interest can not be successfully assailed on the ground of fraud in misrepresenting the value of the estate.

3. ———: ———: ———. The legatee's remedy in such case is by a direct proceeding to avoid the instrument.

4. ———: ———: ASSIGNMENT OF LEGATEE'S INTEREST. A finding on final settlement in the probate court that one was entitled to a certain sum as his share of the estate does not prevent the executor in an action on his bond therefor from setting up an assignment of such interest to him.

5. ———: PURCHASE OF LEGATEE'S INTEREST: BURDEN OF PROOF. A purchase by an executor of the interest of a legatee is not void, the relation merely putting on the executor the burden of proof that the transaction if assailed for fraud was a fair one.

*Appeal from Warren Circuit Court.*—HON. W. W. EDWARDS, Judge.

AFFIRMED.

*Knapp & Harris* for appellant.

*Johnson, Smith & Drunert* for respondent.

(1) The probate court had no jurisdiction to try any question presented in the case at bar. *Johnson v. Jones*, 47 Mo. App. 237. (2) The order of distribution was made in conformity with the statutes and rulings of the appellate court of this state. *Johnson v. Jones*,

47 Mo. App. 237; *Knowlton v. Johnson*, 46 Me. 489; Woerner on Administration, sec. 151. (3) The order of distribution does not conclude the rights of anyone not a party to it. *Johnson v. Jones*, 47 Mo. App. 237; *Knowlton v. Johnson*, 46 Me. 489; Woerner, secs. 151, 1011, 1235, and note. (4) The suit at bar is an ordinary action at law, for the recovery of money. The relator can not convert it into an equitable action by his reply and obtain equitable relief. McQuillin's Mo. Pl. and Pr., sec. 404; Bliss on Code. Pl., 393, 394, 395 and 396. (5) Relator procured the sale to be made. It was made at his instance and request. He received the purchase price and executed a writing transferring all his interest in the estate; by his conduct and request induced the parties to part with their money and change their situation, and now seeks to profit by his own wrong without making, or offering to make, reparation. He is, therefore, now estopped from asserting the invalidity of the contract. Bigelow on Estop. [3 Ed.], p. 480, and case cited; *Flavill v. Roberts*, 50 N. Y. 222. (6) The relator is also estopped by his acquiescence in an affirmance of the sale and transfer. He permitted the same to stand for about three years and a half, until a final settlement of the estate was made, and then for the first time manifested his dissatisfaction. *Alleman v. Manning*, 44 Mo. App. 10. (7) The sale of relator, whether to the executor or to Juliet A. Jones, is not void *per se*, and the facts, if any, which might induce a court of equity to set aside such sale would not be investigated in a collateral proceeding. The assignment should first have been set aside in a proper forum. The demurrer was well taken. *Grayson v. Weddle*, 63 Mo. 523; *Mitchell v. McMullen*, 59 Mo. 252. (8) A sale by an executor to himself is not void *per se*, and if voidable it can only be taken advantage of by persons interested in the estate, such

as creditors and heirs. *Grayson v. Weddle,* 63 Mo. 523; *Mitchell v. McMullen,* 59 Mo. 252; *Frazier's Ex'rs v. Lee,* 42 Ala. 25; *Wayland v. Crouk,* 79 Va. 602; *Staples v. Staples,* 2 Gratt. 225; *Denslop v. Mitchell,* 11 Ohio, 117; *Litchfield v. Co.,* 15 Pick. 23; *Harrington v. Prim,* 5 Pick. 519; *McKay v. Young,* 4 H. & M. (Va.) 430; *Huger v. Huger,* 9 Rich. Eq. 217; *Clark v. Drake,* 63 Mo. 354; *Dillinger v. Kelley,* 84 Mo. 561. (9) If the administrator has an interest in the estate the rule is well established that he may purchase at his own sale, provided the sale be fairly conducted. *Frazier's Ex'rs v. Lee,* 42 Ala. 25; *Dillinger v. Kelley,* 84 Mo. 567. (10) The rule prohibiting an executor from purchasing, or acting as agent in the purchase of, decedent's property has no reference to sales other than probate sales. *Bryant v. Jackson,* 99 Mo. 535; *Dillinger v. Kelley,* 84 Mo. 561; *Grayson v. Weddle,* 63 Mo. 522. (11) The trustee may purchase from the *cestui que trust,* provided there is a distinct and clear contract, ascertained to be such after a jealous and scrupulous examination of all the circumstances, that the *cestui que trust* intended the trustees should buy and there is no fraud, no concealment, no advantage taken by the trustee of information acquired by him in the character of trustee. *Sallee v. Chandler,* 26 Mo. 124; Levin on Trusts, 379; Adams' Equity, secs. 60, 184; *Grayson v. Weddle,* 63 Mo. 539; *Darling v. Potts,* 118 Mo. 519; *Kirchner v. Kirchner,* 113 Mo. 290. (12) The rule which imposes incapacity upon the trustee to deal with *cestui que trust* applies only where the trustee attempts to purchase from, or sell to, himself. There is no positive rule that he can not deal with his *cestui que trust.* Adams' Equity, secs. 60, 183, 184; *Sallee v. Chandler,* 26 Mo. 124; *Dillinger v. Kelley,* 84 Mo. 569. (13) Inadequacy of price will go a great way in the mind of the court to constitute such fraud, though the purchase will not necessarily be set aside on

that account alone. *Sallee v. Chandler*, 26 Mo. 124; Hill on Trusts, 785, 786.. (14) When it is said that a trustee for sale may not purchase the trust property, the meaning must be understood to be that the trustee may not purchase from himself; for there is no rule that a trustee may not purchase from his *cestui que trust*. Levin on Trusts, 379; *Sallee v. Chandler*, 26 Mo. 124; *Dillinger v. Kelley*, 84 Mo. 561. (15) The rule that the trustee for sale can not purchase does not extend to the case of other trustees, who merely buy from their *cestui que trust*, though in this case they can support the transaction only by proving strict fairness and the disclosure of all such information as they have acquired in their character of trustee. Godefroi's Law of Trusts, 335; *Cole v. Frecothrick*, 9 Ves. 234; *Luff v. Lord*, 34 Bea. 220; 11 L. T. N. S. 695; *Tate v. Williamson*, 2 Ch. 55; Lewin's Law of Trusts [9 Ed.], 537, 794.

ROBINSON, J.—This is an action upon the official bond of J. L. Jones, as executor of Julia A. Dearing, deceased, and his sureties therein, for $397.46, the alleged distributive share of the relator P. H. Jones in the estate as legatee under the will of said deceased, as found on final settlement of said executor to be due and owing to relator, and ordered by the probate judge to be paid. him.

The petition is in the usual form, charging the execution and delivery of the bond, its condition, the executorship of defendant, and that by the will P. H. Jones, the plaintiff, was entitled to one fifteenth of the estate of Julia A. Dearing, deceased, the final settlement of defendant, and the order of the probate court to pay relator $397.47, as his distributive share, and prays for judgment of the penalty of the bond, and that execution issue for the sum of $397.47 with interest.

'The answer was that the relator had, prior to the settlement of the executor and the order of distribution by the probate court, sold his interest in said estate to Juliet A. Jones, and had, for value received, in writing duly executed, assigned, and transferred through her agent J. L. Jones, his interest in said estate to said Juliet A. Jones; and that the executor having due notice thereof, paid the sum of $397.46, so found as the interest of said relator in said estate, to Juliet A. Jones and took her receipt therefor together with the other legatees and distributees of said estate and deposited the same with the papers of said estate, with the filing of the probate court duly indorsed thereon, and that having paid same to relator's assignee nothing is now due him from said estate.

Relator then filed his reply admitting "that there was a certain transaction between him and defendant J. L. Jones, prior to said final settlement, as is alleged in the answer herein, and that the assignment which defendants claim was made was the result of the transaction, but plaintiff alleges that after said transaction between him and defendant J. L. Jones, and on the final settlement of said estate by the probate court of Montgomery county, the said distributive share of the relator, as is alleged in the petition herein, was found by the probate court to be due and owing to relator and was thereupon ordered by the probate court to be paid to relator and asks judgment in accordance with the prayer of the petition herein.

" And, further replying, says that the assignment was made to J. L. Jones in his own right while he was acting as executor, and not as agent of Juliet A. Jones, and that same was obtained from relator by false and fraudulent representations, and false and fraudulent concealment concerning the condition and value of the assets of said estate, and that same was unknown to

relator, and that relator relied on the statement and representation of defendant J. L. Jones on the making of said assignment, and prays the court to grant him such relief as he would be entitled to had said assignment not been made, and for such other relief as may be just and proper."

Jury being waived the case was tried by the court, resulting in a finding and judgment for defendant.

There was but little conflict in the testimony at the trial of the case, and we will give the statement of the facts, so far as they are not admitted in the pleadings, as same is found in the opinion of the St. Louis court of appeals, when the case was in that court for determination.

Relator on the day and place therein named executed this assignment:

"Know all men by these presents, that I, Patrick H. Jones, of the city of Galveston, in the state of Texas, have this day, in consideration of the sum of two hundred dollars ($200) to him paid by J. L. Jones, of Montgomery county, Missouri, bargained, sold, assigned and transferred, and by these presents do bargain, sell, transfer and assign unto the said J. L. Jones all my right, title, interest and claim in and to the estate of my aunt, the late Julia A. Dearing of Jonesburg, Montgomery county, Missouri, which said estate is now in process of administration in the probate court of Montgomery county, Mo. The said interest hereby and herein bargained, sold and transferred to said J. L. Jones, to include all my right, title, claim and interest in and to all the property of any kind and description whatsoever belonging to said estate, and do hereby guarantee the title to the claim hereby assigned and transferred to be free and clear of any incumbrance, liens or debts by me made, and that the same is free and clear of any claims, liens or incumbrances. Wit-

ness my hand and seal this twenty-eighth day of August, 1886. Galveston, Texas, 9th—7th—'86.

"P. H. JONES." [SEAL]

Thereafter, the foregoing assignment was indorsed as follows:

"This claim having been purchased by me for Juliet A. Jones as her agent, and with her money, the same is hereby formally transferred to her.

"J. L. JONES."

And, also, to wit: "$395.46 1-3. Rec'd of J. L. Jones, executor of the estate of Julia A. Dearing, deceased, the sum of three hundred ninety seven & 46 1-3 ($397.46 1-3) dollars in full of the amount of the interest of P. H. Jones in said estate as legatee under the will of said deceased as appears by the final settlement of said estate by said executor, the interest of said P. H. Jones having been transferred to me this March 11, 1890.     JULIET A. JONES."

The assignment of relator was made to the executor after some correspondence between them. The letters were not produced at the trial. Relator in substance testified that he was notified that he was one of the fifteen legatees under the will of Julia A. Dearing; that the executor, J. L. Jones, wrote to relator that the estate in his hands consisted of a note for $5,000 with interest which would not be due until 1890, and a few personal effects of small value, and inclosing an advertisement of sale of the latter; that relator thereupon offered to sell his share in the estate to the executor for $275; that the executor replied: "There were so many bills being probated against the estate that if any of the heirs wanted a settlement immediately, he would have to put up the $5,000 note at auction and sell it to the highest bidder, and not knowing what it would bring, he would risk $200 for my interest." Relator states that, believing these statements, he agreed to

take $200 for his share and influenced his sisters to do the same. That the executor sent his private check for $200, less discount, on a Missouri bank to relator; that at the time he did not know the executor was one of the makers of the note, but was under the impression that the executor's father was a maker, who then was dead and his estate unsettled; nor did he know what interest was due on the note, or how old it was; that he would not have sold if he had known he could have gotten the cash in full for his interest in the note; that he sold because the executor had stated that "he would have to sell the note if any of the heirs wanted settlement before it became due, and did not know what it would bring."

The executor testified that he wrote relator "there was not money enough on hand to pay the bills;" that he did not write that "so many bills were coming in that there would not be enough to pay them unless the note was sold;" that he mailed a copy of the inventory to all the nonresident heirs and gave them all the information in his possession as to the condition and value of the estate; that relator wrote back a proposition to sell; that he did not sell the note because a majority of the heirs objected; that he took the assignment in his own name because he was doing all his mother's business (the transferee) and often made contracts for her in his name. He asked his attorney to draw up the form of the assignment, did not instruct him to make it out in witness' name, supposed he did so because he had been in the habit of drawing other contracts in witness' name. That he submitted relator's proposition to sell to his mother, who, after consultation, decided to accept it and give witness the money; that his connection with the matter was simply as agent of his mother, which he disclosed to relator.

The parties agreed as to the following facts: "That

the inventory of the executor showed no real estate; certain personal effects, which brought in on sale $43.93; cash $33.25; one note $20, interest $4.20, and note $5,000, dated January 1, 1884, due January 1, 1890, at five per cent simple interest, interest to date of inventory $468.78. That on first annual settlement, June 7, 1887, the executor charged himself with costs and sale of personal effects, $47.18, and was allowed credits of $30.75, leaving balance $16.43 in his hands, which was approved. That on second annual settlement he charged himself with said balance and notes and interest not charged in first annual settlement, total $5,487.95, and was allowed credits of $22.35, leaving balance $5,482.03. That on final settlement (March 10, 1890) he charged himself with said balance, and amount of error in calculation of interests in previous settlement, $1,101.86, making total $6,583.89, and was allowed credits $621.94, leaving balance $5,961.95, and that said last credits included all debts, to wit, $165.14, which had been allowed, and that the taxes paid were $105.01. That said final settlement was approved. There was an order of distribution of said balance $5,961.95 wherein the amount adjudged relator was $397.46 and a similar amount adjudged to the other legatees on March 10, 1890, and a motion to set the same aside filed by the executor, which motion was overruled."

The relator and appellant, at the close of the testimony, requested the following instruction which shows clearly the theory upon which he tried the case, and upon which he expected a judgment.

"1. The court sitting as a jury declares the law to be that the assignment to J. L. Jones, the executor of Julia A. Dearing, deceased, was in violation of law, against public policy, and is prohibited by the rules of equity, and conferred no rights upon him as against

the plaintiff in this action, and that J. L. Jones was equally disabled by law from acquiring any rights under said assignment for any third person as agent of such third person, and no evidence in support of said assignment, or for the purpose of proving such agency, can be considered.

"2.   The court declares the law to be that the assignment offered in evidence being to J. L. Jones, in his own name and for his own behalf and under seal, no evidence for the purpose of showing that said assignment was for the benefit of a third person not named therein, and that said J. L. Jones was agent of such third person in obtaining such assignment, can be considered.

"3.   The court declares the law to be that the assignment offered in evidence having been made before the final settlement in the probate court and judgment and order of distribution thereon, the rights, if any, of any assignee thereunder are merged and extinguished in said judgment, and failure of the defendant, J. L. Jones, to pay to the relator, the distributee in such judgment, in accordance with the order of the probate court, is such a breach of the bond sued on as entitled plaintiff to recover."

Which being refused, the court found the issues for defendant and plaintiff prosecutes this his appeal for a reversal thereof, to the St. Louis court of appeals wherein the judgment of the circuit court was reversed, and afterward, on application of respondent, the case was ordered certified to this court on the ground that the opinion filed therein seemed to be opposed to, and in conflict with, former rulings and opinions of this court.

Treating this case as an action at law against the executor and his bondsmen for the recovery of a money judgment, which in fact it is, regardless of the reply

filed with its prayer for equitable relief, we think the judgment of the trial court was for the right party upon the pleadings and the admitted and undisputed facts, and for that reason no reversal will be ordered, no matter what error, if any, intervened upon the trial of the case.

The signature to the assignment by relator of his share of the estate of Julia A. Dearing, in the hands of J. L. Jones, executor, made under seal to said executor, being admitted, and proof undisputed being made of the transfer by the executor of the assignment to Juliet A. Jones and her receipt for the money due to relator as legatee after final settlement, constitute a defense in this action for the amount adjudged to be due relator in the order of distribution of said estate by the probate court, unless it was shown that some fraud was used in procuring the signature of relator to the assignment; which relator himself disavows and states that he signed the paper interposed as a defense to his action for his interest in his aunt's estate, and he wrote his sisters what he had done in regard to his interest in the estate and advised them to do the same, his only claim being that he had been deceived as to the true value of the estate, by the executor to whom he sold.

In discussing the question as to what evidence is admissible under the plea that a deed was obtained by fraud and misrepresentation, the court, as early as 7 Mo. (p. 424) in the case of *Burrows v. Alter*, speaking through SCOTT, Judge, says:

"Under the plea that a deed was obtained by fraud, covin, and misrepresentation, the only evidence of fraud that can be received is that in relation to the execution of the instrument, as that the party was illiterate, and the deed was misread to him, or that another deed than that intended to be executed was sub-

stituted. But fraud in the consideration, or a partial or total failure of consideration, is no defense to an action at law on a bond. The seal itself imports a consideration. Relief must be sought in a court of equity."

In *George v. Tate*, 102 U. S. 564, the court there uses this language: "Proof of fraudulent representations by Myers & Green, beyond the recitals in the bond to induce its execution by the plaintiff in error, was properly rejected. It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device, an instrument which the party did not intend to give. *Hartshorn et al. v. Day*, 19 How. 211; * * * The remedy is by a direct proceeding to avoid the instrument."

Plaintiff signed the paper, fully understood its terms and agreed to all that it contained; the deception or fraud alleged and claimed by him was not as to the making and signing of the contract but as to the condition and value of the estate contracted away, relief against which can not be had in a court of law in a suit of this character. The assignment is fair upon its face, it is between parties competent to contract, and regarding a proper subject-matter of contract, and has been signed by a competent person as and for an honest contract for a valuable consideration received and acknowledged, and must stand as a binding contract in law, between the contracting parties, until annulled or set aside in a court of competent jurisdiction.

So long as the settlement between relator and the defendant J. L. Jones either for himself or in behalf of his mother remained intact and undisturbed by the mutual agreement of the contracting parties, unan-

nulled by judicial proceedings, it was a complete barrier to relator's assertion of right against the executor and his bondsmen to the $397.46, the alleged distributive share of said relator in the estate of Julia A. Dearing deceased as legatee under the will. *Clough v. Holden*, 115 Mo. 336; *Tracy v. Union Iron Works*, 104 Mo. 193; *Jarrett v. Morton*, 44 Mo. 275; 1 Bigelow, Fraud. 74; 2 Chitty, Contracts [11 Am. Ed.], 1089, note m.; *Kinne v. Webb*, 49 Fed. Rep. 512. And that, too, regardless of the findings of the probate court of Montgomery county (after the making of the assignment), on the final settlement of the executor, 'that the relator was entitled to the above-named sum as his distributive share of said estate and its order that same be paid to relator as one of the legatees under the will. *Johnson v. Jones*, 47 Mo. App. 237; *Knowlton v. Johnson*, 46 Me. 489.

Appellant's first assignment of error is the refusal of the trial court to give instruction numbered 3 asked by him, to the effect that if the assignment offered in evidence had been obtained before the final settlement in the probate court, and the judgment and order of distribution thereon, the rights, if any, of the assignee thereunder were merged and extinguished in the order, and the failure to pay to relator the amount named in said order, as distributee, is such a breach of his official bond as to entitle plaintiff to recover.

If appellant's contention in this respect was correct, the question of fraud in the procurement of the assignment, or the relation of the contracting parties, one to the other, would be eliminated from the consideration of this case. If the probate court of this state had the power to pass upon the rights or claims of third persons against legatees or devisees of estates in the course of administration, or had power to substitute contending parties in the place of the legatees, or dis-

tributees, there might be some force in appellant's contention, but such is not the law of this state.

Courts of general jurisdiction alone in this state must determine the rights and claims of all third parties against legatees, devisees, or distributees. Such rights must, if an adjudication becomes necessary, be tried in a court of general jurisdiction, unless such jurisdiction is expressly conferred by statutes on the probate courts, which is not so in this state. Hence, no right, claim, or interest of the assignee was or could be affected by the probate court, and any order to that effect by that court (if such an order was made) would be without authority—would be a nullity and of no binding force on anyone, and it must follow that if the assignment vested any right in Juliet A. Jones, as transferee thereof, she will be unaffected by the order of distribution made by the probate court adjudging the legacy of $397.46, in favor of relator, and defendant in this suit will be protected to the extent of his payment of the legatee share to said Juliet A. Jones, as such assignee; provided the position taken by appellant is indicated by the propositions announced in the first and second instructions asked, to the effect that an executor can not purchase, either for himself or as agent for another, the right, claim, and interest of the legatee of the estate in his hands for distribution.

The appellant insists that the transaction as between the relator and executor, because of the trust or fiduciary relation existing between them, is void; and the St. Louis court of appeals, when the case came up for review before it, conceded the fairness of the transaction but took practically the same view and reversed the judgment of the circuit court, and disposed of that branch of the case in a few words, as follows: "This narrows the question to a single inquiry: Can an executor, on his own behalf, or as agent of another,

purchase the interest of a legatee in the estate for a sum which turns out to be about one half of its value, even if it be conceded that there was no actual fraud in the purchase? As to the first alternative, i. e., the purchase for himself, the question has been so often answered in the negative that it will not bear further discussion." Citing *Thornton v. Irwin*, 43 Mo. 153, and numerous other authorities, and then closes the paragraph with these words: "That person might be wholly unable to show actual fraud on the part of his trustee. He is not required to do it."

In other words, the proof of, or an admission of, the relationship of legatee and executor, as charged in the petition of plaintiff, rendered unavailing and ineffective as a defense, the payment by the executor to the assignee of the contract of assignment, relator's interest in the estate in his hands for distribution. Stated in other words, the proposition is, that the contract of assignment in this action is to be treated as if it were not, and under no condition is, a bar to a second recovery of the money, procured thereunder by the legatee, in a suit by him against the executor. We have the anomaly of an executed contract, where a valuable consideration has passed between the contracting parties therefor, made by parties of full age, discretion, and mental capacity, admitted to have been made, signed, and delivered in the exact condition as when presented at the trial, regarding a proper subject-matter of contract, not immoral or prohibited by statute nor against public policy, declared in a court of law to be worthless and unavailing to its possessor, in a contest at law for the identical subject-matter settled and adjusted by the contract. A proposition we think not supported by authority in this state, ungrounded in equity, unbottomed on principle, unauthorized and unwarranted by the dictates of public policy.

We do not think the principles involved in this case are within the doctrine interdicting dealing on part of trustees with trust estates. In *Ex Parte Lacey*, 6 Ves. 625, Lord ELDON says: "The rule I take to be this: Not that a trustee can not buy from his *cestui que trust*, but that he shall not buy from himself." The rule which imposes upon the trustee incapacity to deal with and buy from his *cestui que trust* applies only where the trustee attempts to purchase from or sell to himself. The rule at no time ever reached the point that the trustee can not deal with his *cestui que trust*. He is not allowed to speculate or make profit out of the trust funds in his hands, and if he does, then the profit so made goes to the trust fund; nor can he perform the double functions of seller and buyer at the same time.

The fund in this case, it is true, was in the hands of the executor, or would be there during the course of the administration of the estate, in trust for the use of the relator, but the executor undertook no disposition of it whatever that would impair or affect its value in his hand as a trust fund. He did nothing to diminish the value of the fund or to divert it from the channel into which it was by law to flow. It went unimpaired and undiminished, by fraud or otherwise, into the hands of the assignee of the legatees under the will, which empowered the executor to act in the management of the fund. The legatee who, by the will, was entitled to the fund disposed of it, not the executor. If the executor should have disposed of the fund by sale, use, or otherwise, the law would say to him that it was done for the use and benefit of the beneficiary of the fund, and the beneficiary would have been entitled to whatever of profit was made out of the use or sale of same. Not so, however, when the beneficiary himself uses, sells, or disposes of that which belongs to himself.

VOL. 131 mo—14

No claim is made but that the legatee was competent to make the sale and disposition of his distributive share in his aunt's estate, and that if made to anyone else than the executor it would have passed title thereto, but, says appellant, being made to the executor it is void, and should be so held and treated in a court of law, when the evidence of the sale and assignment thereof is interposed to prevent a judgment for the second payment of the same fund (a proposition most shocking to all sense of fairness and most abhorrent to all principles of law).

While the law exacts of a trustee the utmost good faith in all his dealings with the beneficiary regarding the trust funds in his hands, and commands him, on account of the fiduciary relation, to make full, fair, and open disclosures of all facts in his possession, it has never yet been announced as a doctrine that all dealings in regard to the trust fund are void and to be held for naught, in a court of law, at the mere suggestion of the relationship of the parties by the beneficiary. The office of trustee is no mere pitfall into which any scheming, exacting, or traitorous beneficiary may throw the trustee at pleasure. There is no difference in the treatment of dealings between trustee and the *cestui que trust*, or the fiduciary with his beneficiary, than with strangers, except in the manner and burden of proof when the dealing is assailed in a proper proceeding charging to the trustee or fiduciary unfairness or fraud. Under these circumstances, the burden is upon the trustee or fiduciary to show that the transaction was open, fair, honest, and free from fraud on his part, whereas in all other cases he who alleges and charges unfairness or fraud must prove it.

This rule holds good when any transaction, whether of sale or settlement, involving the conduct of a trustee or fiduciary is called in question; the law im-

State ex rel. v. Jones.

poses the burden of proof upon the trustee to show that his conduct was open, fair, and free from fraud or suspicion. Having full charge of the estate, whether of money or property, he alone is supposed to know all about its situation, condition, and value, and at the settlement or sale and purchase by him of the estate, he is required to make a full, fair, and open disclosure of all things regarding the estate in his hands at the time.

We have examined all the authorities cited by the appellant in support of this contention, as well as those cited by the court of appeals in support of its judgment, and find that they go no further than to announce that a trustee or fiduciary can not purchase at his own sale, nor speculate or make profits out of the trust fund or estate in his hand—propositions not disputed nor involved in the discussion of the case now before us for determination. The two propositions here involved are, can a trustee or fiduciary deal with or purchase from his *cestui que trust* or beneficiary, funds in his hands, which up to the time of sale have been preserved intact and undisturbed; and, second, if so, can the sale be questioned in an action at law when the evidence of the transaction has been reduced to writing, and that writing interposed as a defense to a suit to recover the proceeds named in, and adjusted by, said writing.

It follows from what has been said that the trial court properly refused the instruction as asked by plaintiff and that the judgment of that court was for the right party and should be affirmed, and the cause is remanded to the St. Louis court of appeals with directions to enter a judgment to that effect. BARCLAY, J., and MACFARLANE, J., concur in the result. BRACE, C. J., dissents.